FILED
2004 NOV 18 P 3: 26
U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| VS. | : NO. 3:03CR97 (RNC) |
| DONNA ZADORA | : NOVEMBER 18, 2004 |

### SUPPLEMENTAL MEMORANDUM RE: DOWNWARD DEPARTURE AND OTHER ISSUES

**BACKGROUND**

On June 24, 2003, Ms. Zadora entered a plea of guilty to Count One of an indictment charging her with Aiding and Abetting in the Preparation of False Tax Returns in violation of 26 U.S. Code §7206(2). She stipulated, as part of her plea agreement, that the resulting tax loss to the Government from the false deductions was $176,619.

On September 25, 2003, the District Court sentenced the defendant to a "split sentence" of five months imprisonment, five months home confinement, and a condition of one year of supervised release. The Court imposed a $20,000 fine, a special assessment of $100, and ordered the defendant to pay the cost of supervision at the rate of $279.50 per month.

The Government, dissatisfied with Judge Squatrito's granting of a downward departure for extraordinary family circumstances under Section 5H1.6 of the Guidelines, filed a notice to appeal the sentence to the Second Circuit.

The Court of Appeals reversed the sentence and remanded this case to the District Court. It found that Judge Squatrito had abused his discretion in finding a downward departure on the basis of extraordinary family circumstances. Upon remand, the case was transferred to this Court, and a sentencing hearing was held on June 30, 2004. At that time, this Court indicated that it would resentence Ms. Zadora based upon the mandate from the Second Circuit and "on the situation as it exists today". P. 2. Ms. Zadora's then counsel informed the Court that "things have now changed, and the needs of mom have increased". P. 5. Because of the increased needs of Mrs. Ksiazkiewicz, the Court was informed that she was spending weekends at Ms. Zadora's house.

This Court then expressed its opinion that in order for the defendant now to prevail on her claim for a downward departure for extraordinary family circumstances, she would have to present something "starkly different" from that which was presented before Judge Squatrito at the 2003 sentencing. P. 7. The Court, more specifically, told Mr. Wurz that if Ms. Zadora wanted to prevail on her claim, he would have to present "medical evidence that the mother's condition is worse", p. 9, and that it couldn't make a judgment without a medical opinion.

Additionally, the Court made other remarks to which the defendant does not entirely agree. For example, the Court said that in order to prevail, the family

-2-

circumstances would have to be "a <u>very</u> extraordinary thing" P. 9. Whatever difference there is between this comment and that set out before Section 5H1.6, the defendant feels that the word "<u>very</u> extraordinary" is more than either the guideline or the caselaw require.

Similarly, the Court stated that the medical evidence must be such that "nobody else" is available to care for the defendant's mother. The defendant can find no case that holds that "nobody else" must be found to be available, but that the nature and quality of the alternative care that could be provided by somebody other than the defendant, must be such that the cared for person (be it a child, spouse, or parent) <u>could</u> be irreparably harmed. It is submitted that no defendant could ever show that there is "nobody else" in the world who might step in in the absence of the defendant, or can it be proven that if the defendant would disappear for five months, the person for whom he or she cares would almost certainly face instant death. Those claims are not made in this case, nor is it felt that the caselaw requires the defendant to sustain that higher burden.

I.  **PRESENT SITUATION**

The defendant's mother's condition has substantially worsened. On July 15, 2004, the defendant's mother, on medical advice, moved in with the defendant and her husband. This in itself is a substantial change from the conditions that existed at

-3-

the time the defendant was sentenced last year. The situation that caused Mrs. Ksiazkiewicz to live with Ms. Zadora involved the fact that her mother was falling down with increasing frequency. Her mother is constantly missing her medication, which she must take three or four times a day. Presently, Ms. Zadora bathes her mother, cooks for her, takes her to the doctor, and takes care of all her needs. The evidence from Ms. Zadora, from Mrs. Ksiazkiewicz, and from the doctors who will testify at sentencing are that Mrs. Ksiazkiewicz's condition is much worse than it was in September 2003.

The Government raises in its many memoranda of law opposing a two point downward adjustment that Mrs. Ksiazkiewicz somehow was able to survive during the five months from October 2003 to March 2004 while Ms. Zadora was at Danbury prison. At that time, Ms. Zadora's daughter was unemployed and was able to carry some of the burden for Mrs. Ksiazkiewicz, whose condition had not worsened. Ms. Zadora's daughter, who is grown and does not live with her, has now taken a job in Fairfield County. That commute, coupled with Ms. Ksiazkiewicz's worsened condition, essentially eliminates her as a caretaker for her grandmother. The daughter arrives home at 7 or 8 in the evening and, obviously, cannot provide the care for Mrs. Ksiazkiewicz under her present situation. Ms. Zadora's husband works full time in a factory and cannot be expected to carry on the burdens of Ms. Zadora for his mother-

in-law. As will be shown at the hearing, the cost of full time home care is astronomical, and probably beyond the means of the Zadora family; and the quality of service is such that it is likely, although not absolutely certain to be far less beneficial to the mother.

The short of it, as Dr. Diaz will testify, is that if Ms. Zadora goes to prison for the period of time called for by the guidelines, Mrs. Ksiazkiewicz shortly thereafter will probably have to go a nursing home. Dr. Diaz will say from his experience that a nursing home could have a very debilitating effect upon Mrs. Ksiazkiewicz because of her age and present health situation. He will also tell the Court that it is almost impossible to find an outside agency or person to provide the necessary care for Mrs. Ksiazkiewicz. Unlike last year, Mrs. Ksiazkiewicz now needs constant care, and it would appear that only Ms. Zadora can so provide that care.

Additionally, a psychotherapist, Dr. Julia Ramos-Grenier, who has examined Mrs. Ksiazkiewicz, Ms. Zadora, and other family members, will testify that Mrs. Ksiazkiewicz is so psychologically dependent upon her daughter, that regardless of the objective quality of care provided by others, the loss of Ms. Zadora will have a profound psychological effect on her mother.

II.     **LAW**

### A. The Defendant will Provide Sufficient Evidence and Testimony at the Sentencing Hearing on November 22, 2004, to Convince the Court by a Preponderance of the Evidence that it Should Downwardly Depart a Mere Two Levels.

The Government's argument seems to be that as long as there is someone else who can provide for the defendant, the Court should never downwardly depart under Section 5H1.6. The mandate from the Second Circuit more appropriately said there were no findings and a dearth of evidence in the District Court to answer the question why no one else could care for Mrs. Ksiazkiewicz while Ms. Zadora went off to prison.

The mere existence of other people in the family household who can provide some type of care does not negate the applicability of Section 5H1.6. In a recent two parent household case, the Eighth Circuit downwardly departed <u>eight levels</u> after a finding of "extraordinary family circumstances". <u>United States v. Spero</u>, 382 F3d 803 (8th Cir. 2004). The defendant was married with four children, one of whom was obese and autistic. The care needed for this child was hands-on and intense. <u>United States v. Spero</u>, supra. When the defendant came home from work, he relieved his wife of some of the burden. The Court noted that the child was very attached and close to his father and that removing the defendant father from the home would be "detrimental" to the child. The child's "optimum development" would depend upon continued involvement with the defendant father. Defendant's position was supported

-6-

by medical evidence. <u>United States v. Spero</u>, supra. It is important to note that the Eighth Circuit did not hold that as long as there were other people, i.e. the child's mother, in the household, exceptional family circumstances would not be applicable. What is required, at least in the opinion of the Eighth Circuit, is that the defendant be "critical to a child's well-being". supra at 805. For exceptional circumstances to exist, as has to be shown by the information provided to the Court in this memorandum of law and will be shown by testimony and medical evidence on November 22, 2004, Ms. Zadora is "critical" to the well-being of Mrs. Ksiazkiewicz.

    The defendant again stresses that the conditions of the family must be "extraordinary" but certainly not "very extraordinary" or highly atypical. Extraordinary in the context of Section 5H1.6 means simply "the circumstances of the case must simply place it outside the ordinary". <u>United States v. Dominguez</u>, 296 F3d 193, 195 (3rd Cir. 2002). These circumstances which the Court should consider do not have to be "extraordinary by any particular degree of magnitude". supra at 195. All the Court must determine in deciding whether the facts of the case are extraordinary is a "comparison with the facts of other guideline cases". supra. This Court sees more Guideline cases than any Court of Appeals and is in a better position to decide. supra.

    Other courts have also found that the defendant caretaker need not be totally

-7-

irreplaceable for the Section 5H1.6 departure to apply. A Court has found that the defendant had played an indispensable role in caring for his wife who had a kidney removed due to cancer and was diagnosed of having a risk of committing suicide if she lost her husband to death or incarceration. United States v. Leon, 341 F3d 928 (9th Cir. 2003). The defendant in Leon faced a guideline range almost identical to this defendant's of 10 to 16 months. Just as occurred in the present case, the Leon court departed downward by two points, and the defendant received a split sentence of eight months in prison and eight months home detention. Just as this defendant's mother is extremely psychologically dependent upon Ms. Zadora, the defendant's wife in Leon was obsessively dependent upon him. Just as other relatives in Leon could arguably have cared for Leon's wife, there are relatives before this Court who arguably could care for Mrs. Ksiazkiewicz. In Leon, the defendant's daughter had left the home and had psychological and behavioral problems of her own. supra at 931. The siblings of the defendant and the wife there, just as the siblings and defendant before this Court, were found not to have a relationship that can be relied on to help. Supra at 931. In an objective and subjective sense, Ms. Zadora is an "irreplaceable caretaker" of her elderly mother. United States v. Faria, 161 F3d 761, 762 (2d Cir. 1998).

The relevant cases from the Second Circuit have been briefed and discussed

at length by both parties prior to the resentencing hearing scheduled for November 22, 2004. In the case of <u>United States v. Gallante</u>, the defendant was not the only caretaker for his children since his wife, despite her limitations, was in the home. <u>United States v. Gallante</u>, 111 F3d 1029 (2d Cir. 1997), reh. en banc 128 F3d 788 (1997).

In <u>United States v. Alba</u>, 923 F2d 1117 (2d Cir. 1991), the defendant had a wife with whom he lived and who also arguably could have provided the care for the disabled father while he was incarcerated. There the Court found that the imprisonment of the defendant, Alba, would "risk the destruction of an otherwise strong family unit". <u>United States v. Alba</u>, supra at 1122. Thus, the focus of the Court's inquiry was not simply is there another relative out there who could care for the disabled father, but the emotional and psychological impact upon the disabled family member.

In <u>United States v. Johnson</u>, 964 F2d 124, 129 (2d Cir. 1992), the defendant was solely responsible for the upbringing of three grandchildren, but the downward departure was permitted because the defendant faced more responsibility than the ordinary single parent. Similarly, Ms. Zadora's responsibilities towards her mother are not ordinarily what one encounters, although admittedly not unique. The defendant concedes that her family circumstances are not identical to those of <u>Johnson</u>, <u>Alba</u>, or

Gallante, but as the Second Circuit noted in Gallante, "family circumstances seldom are". United States v. Gallante, supra at 1036. The question, thus, is not whether the family circumstances for Ms. Zadora are identical to those for which appellate courts have found grounds to depart, but the Court should focus on whether or not the circumstances are "not far removed" from those other cases. United States v. Gallante, supra at 1036.

### B. Credit for Time Served in Detention

Should the Court not grant the meager two point downward departures sought by Ms. Zadora, the defendant requests that some credit be given on the 15 month sentence called for by Base Offense Level 14 of the guidelines for the approximately 3½ months Ms. Zadora was in home detention. United States vs. Carpenter 320 F3d 334 (2d Cir. 2003). The facts of Carpenter are almost identical to those now before this Court. After receiving a downward departure, the Carpenter defendant was sentenced to five months in jail and five months of home detention. Supra. After he completed his sentence and the Court of Appeals held that it was erroneous to grant him a minor role adjustment, he appeared again before the District Court for resentencing. The Court did, however, hold that he was entitled to some reduction of the minimum 15 month sentence and a limited departure for the home detention which he had already served. United States v. Carpenter, supra at 338-339.

Basically, the reasoning of <u>Carpenter</u> would preclude the Court from imposing a 15 month sentence of Ms. Zadora, because to do so would mean that she would have slightly over 3 months of home confinement and the 15 month sentence. She would, thus, be set apart from other individuals who were in a guideline range calling for the identical 15 month sentence. The Second Circuit found that the extent of any departure from the 15 month low level guideline range should be determined by the District Court based upon the conditions of home confinement. The Court recognized that the conditions of home confinement, although onerous and restrictive, were clearly less restrictive than time spent in prison and further opined that the Court would be "puzzled" if the District Court departed more than half the time spent in home detention. <u>United States v. Carpenter</u>, supra at 346. Thus, the defendant asks the Court to permit an inquiry of the defendant to determine the conditions of home confinement that she served to determine how far to depart below the minimum guideline level.

## **CONCLUSION**

Ms. Zadora, if returned to prison will lose her job and the lifetime medical benefits she would receive in May 2005 if she continued to work. Her mother will suffer irreparably. It is respectfully requested that this Court depart two levels, make specific factual findings, and impose the same sentence previously imposed by Judge

Squatrito.

Respectfully submitted,

THE DEFENDANT, DONNA ZADORA

By: /s/ Richard S. Cramer
Richard S. Cramer
449 Silas Deane Highway
Wethersfield, CT 06109
Tel. (860) 257-3500
Federal Bar No. ct00016
Email: cramer @ snet.net

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was faxed and mailed this 18th day of November 2004 to:

Eric Glover
Assistant U. S. Attorney
P.O. Box 1824
New Haven, CT 06508
Fax (203) 773-5376

and hand-delivered to:

Office of U. S. Probation
450 Main Street
Hartford, CT 06103

/s/ Richard S. Cramer
Richard S. Cramer

-12-